1. "Possession of land is notice of whatever right or title the occupant has." Code, § 85-408.
2. "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." Code, § 37-116.
3. The allegations of the petition were sufficient to show that the defendant loan association had notice of the plaintiff's equity in the land at and before the time the association took its security deed from another person, and that such security deed is subject to cancellation as between the plaintiff and the association, whether or not it might still be treated as valid against the grantor to the extent of the latter's interest. Simpson v. Ray, 180 Ga. 395 (178 S.E. 726); Chandler v. Georgia Chemical Works, 182 Ga. 419
(185 S.E. 787, 105 A.L.R. 837); Dyal v. McLean, 188 Ga. 229
(3 S.E.2d 571).
4. From the allegations of the petition it does not appear that the association is entitled to any equitable right, as against the plaintiff, to which he should give effect; and consequently the rule that he who would have equity must do equity is inapplicable. Code, § 37-104; DeVaughn v. Griffith, 149 Ga. 697 (2), 698 (101 S.E. 794); Information Buying Co. v. Miller, 173 Ga. 786 (2) (161 S.E. 617), The case differs on its facts from Harton v. Federal Land Bank of Columbia, 187 Ga. 700 (2 S.E.2d 62), in which the petition affirmatively showed that the plaintiff was indebted to the defendant.
5. The court erred in sustaining the demurrer and dismissing the action as to the loan association.
Judgment reversed. All the Justicesconcur.
 No. 13340. NOVEMBER 14, 1940.
V. G. Fulmore filed a suit against the Macon Federal Savings and Loan Association, W. O. McNair, and B. R. McNair. Later the plaintiff, by amendment, substituted the name McNair Lumber 
Supply Co. for W. O. McNair in several places where the latter name alone was used in the original petition. The Macon Federal Savings and Loan Association filed a general and a special demurrer, which the court sustained, dismissing the case as to that *Page 152 
party, and the plaintiff excepted. The petition as amended was substantially as follows:
(1) Each of the defendants is a resident of Bibb County.
(2) On July 27, 1938, petitioner contracted to purchase from J. A. King, in his capacity as guardian of May Durden, a described tract of land in Bibb County, Georgia, consisting of a residence lot in the suburb known as South Macon, at and for the sum of $750. It was necessary before said property could be sold that certain legal formalities, not here material, be complied with, but possession of the property having thereon a large frame dwelling was immediately delivered to petitioner. Petitioner remained in possession of said property until after December 5, 1938; such possession being manifested by the erection of three separate houses on said property by petitioner, as fully completed on December 5, 1938, and by the occupation of one of the houses so erected by a tenant; said tenant having moved into such house prior to November 18, 1938, and further by the exercise of every act of dominion over said property to the exclusion of all persons whatsoever.
(3) Petitioner is a builder and contractor, and agreed to buy said property for the purpose of constructing on said property three modern dwellings, using the material in the old house in such construction.
(4) Petitioner had on hand sufficient funds to pay the purchase-price aforesaid and to pay in part for necessary additional materials for the construction of the three houses aforesaid, and approached the McNair Lumber Supply Co. acting through said defendant W. O. McNair, officer and agent of said corporation, about furnishing such other materials as were necessary to the completion of said three houses.
(5) Said McNair Lumber Supply Co., acting through said W. O. McNair, agreed with petitioner that it would furnish or cause to be furnished, such material as was needed by petitioner in the construction of said houses.
(6) Construction on said improvements was begun during the latter part of August, 1938; and during September, October, and the early days of November the improvements were practically completed.
(7) During this time, pursuant to agreement between petitioner *Page 153 
and the said W. O. McNair acting for and on behalf of the McNair Lumber Supply Co., the McNair Lumber Supply Co. furnished materials in the total amount of $1049.79, according to invoices furnished by the McNair Lumber Supply Co., beginning August 30, 1938, and ending November 1, 1938.
(8) During this said period petitioner had furnished for the construction aforesaid other necessary materials and had paid various items of labor necessary for such construction, and had himself continuously labored on the construction aforesaid, the reasonable value of such labor by the petitioner being not less than $561.75, and the cash advanced by petitioner from his own funds for the construction aforesaid being not less than $870.65, and in fact much larger. In addition to the materials which petitioner purchased from the said McNair Lumber Supply Co., and in addition to the cash advanced by the said McNair Lumber 
Supply Co. to or on behalf of petitioner, petitioner procured or caused to be expended in the improvement of the real estate described in paragraph 2 of this petition the following sums: (twenty-two items due to named laborers and materialmen, aggregating $2,147.99.)
(9) In the meantime and on or about the ____day of September, 1938, McNair Lumber Supply Co. had advanced to petitioner the sum of $200 in cash to be used for the payment of labor or materials for the construction aforesaid.
(10) J. A. King, guardian, completed compliance with legal formalities necessary to the sale of said property, and the same was advertised for public sale on the first Tuesday in October, 1938 (October 4), and petitioner prepared to complete said purchase of such property by becoming the purchaser at such sale, and procuring the guardian's deed to the property aforesaid; but W. O. McNair stated to petitioner that it would save recording fees and expenses incidental to the execution and recording of a mortgage if the guardian's deed should be made to W. O. McNair. McNair Lumber Supply Co. furnished the purchase-price of $750, and charged the same to petitioner's account along with materials hereinbefore referred to and the guardian's deed to said property was made to W. O. McNair. After the making of said deed, the McNair Lumber Supply Co. acting through W. O. McNair continued to furnish to petitioner, and charged to him, materials used *Page 154 
in completing improvements on said real estate. W. O. McNair stated to petitioner that when said improvements were completed petitioner could procure a loan on said property, giving to the lender a first lien thereon, such loan to be sufficient in amount to pay the McNair Lumber Supply Co. for all materials furnished by it for the improvement of said real estate, as well as cash advanced by McNair Lumber Supply Co. for the purchase-price of said property in the amount of $750 and $200 cash advanced by McNair Lumber Supply Co. to petitioner.
(11) Early in November, 1938, the houses on said property were nearing completion; and petitioner, pursuant to said agreement with W. O. McNair, started an effort to borrow on said property a sufficient amount to pay all items covered by the agreement aforesaid, as well as to pay balance to certain laborers and materialmen who had furnished labor or material for the construction of said houses. Among other prospective lenders, petitioner applied to the Macon Federal Savings and Loan Association for a loan on said property in the amount of $3800, and W. H. Watson, assistant secretary of said defendant, inspected said property and took from petitioner an itemized statement of information which this defendant desired in considering petitioner's application for the loan, and Watson personally inspected said property at the instance of petitioner.
(12) The improvements made on said property included one house of five rooms, known as 111 Harrold Street; another house of five rooms, known as 115 Harrold Street; and one house at 336 Jeff Davis Street, consisting of five rooms; each of the three houses containing a bathroom and necessary closet and storage space with porches, and the Jeff Davis Street house also included a large hallway.
(13) As the houses were nearing completion, early in November, 1938, petitioner listed the houses for rent with certain real-estate agents in Macon, including the agency of Theo Volk, now deceased, and before November 1, 1938, Volk procured a tenant for 111 Harrold Street at a monthly rental of $20, such rental period to begin November 21, 1938, though the tenant moved into said house before that date.
(14) The other houses were listed as follows: 115 Harrold Street, $20; 336 Jeff Davis Street, $25; which was and is a reasonable rental for said houses. *Page 155 
(15) W. O. McNair, at some date early in November, began, in his relations with third parties, to assert unconditional ownership in said property, and about this time applied to the Macon Federal Savings and Loan Association for a loan on said property amounting to $2500, and this loan was actually consummated according to deed of record in book 460, page 39, in the clerk's office of Bibb superior court, the instrument being dated on November 18, 1938, and actually recorded on November 22, 1938.
(16) At each of these dates petitioner was in actual and undisturbed possession of the property aforesaid, and the property described in security deed from said McNair to said loan association.
(17) W. O. McNair, through his attorney at law, William C. Turpin Jr., by letter dated November 22, 1938, advised petitioner that he would have until December 5 within which to procure the necessary loan on said property, to pay McNair Lumber Supply Co. the sums advanced by it in cash and building materials furnished by it, as hereinbefore fully set out, together with usurious charges or other illegal charges, which according to statement of McNair Lumber Supply Co., on November 9, 1938, amounted to $2119.79, this sum including $1049.79 in materials; $750 purchase price of the property from the guardian as aforesaid, and $200 in cash, and $120 consisting largely, if not wholly, of usurious charges for funds so advanced.
(18) Upon receiving such notice petitioner went to W. O. McNair, and was advised by McNair that it would take $2400 to satisfy McNair Lumber Supply Co., and that petitioner would lose all of his interest in said property unless he paid $2400 to McNair Lumber Supply Co. (whether wholly for the benefit of McNair Lumber Supply Co., or not, petitioner was not advised), which sum was largely in excess of the total amount of materials and money advanced by the said McNair Lumber Supply Co. to petitioner for the improvement of said real estate, and any sums paid by W. O. McNair, for paving assessment, taxes, or otherwise on said property. Notwithstanding W. O. McNair advised petitioner, under date of November 22, 1938, that petitioner would have until December 5 to place a loan on said property in accordance with the original agreement between him and W. O. McNair, W. O. McNair, by instrument dated the ____day of November, 1938, and recorded in book 382, page 337, of the clerk's office of *Page 156 
Bibb superior court, on November 28, 1938, conveyed said property to his said brother, B. R. McNair, to secure an indebtedness of $1000; so that W. O. McNair had, under the terms of said agreement with petitioner, advanced less than $2200 dollars in materials and cash, has procured loans on said property totaling $3500; and by the record of these security deeds together with the record of the legal title to said property in himself, W. O. McNair, made it impossible for petitioner to procure necessary loans to pay the amount W. O. McNair is justly due for said advances as aforesaid.
(19) B. R. McNair is a brother of W. O. McNair, and is closely associated with him in the conduct of the McNair Lumber Supply Co. Petitioner alleges, on information and belief, that B. R. McNair on the date of his taking the security deed from W. O. McNair had actual knowledge of all of the facts herein alleged as to petitioner's ownership of said property and of the circumstances under which W. O. McNair held legal title thereto, and on the date of said deed as well as on the date of the record of said deed petitioner was in actual possession of said property.
(20) On and after December 5, 1938, W. O. McNair, without taking any legal steps to terminate petitioner's interest in said property, arbitrarily and illegally took physical possession of said property, petitioner not living upon any part thereof, required the tenant at 111 Harrold Street to attorn to him as landlord, made some alterations and changes in the other houses, completed construction of all the houses according to his own ideas, and without the consent and against the will of petitioner excluded him from any control so far as actual possession in said property was concerned, and has since been in exclusive possession of said three houses, exercising all the rights of ownership with reference thereto.
(21) Petitioner had no other means of procuring the necessary funds with which to pay the said W. O. McNair or the McNair Lumber Supply Co. amounts due him as aforesaid, except by using his property as hereinbefore described as collateral; and this fact was well known to W. O. McNair.
(22) W. O. McNair has always insisted that the McNair Lumber 
Supply Company was entitled to a larger amount of money in connection with said transaction than he or that company, either or both, are entitled to as hereinabove set out, and any tender to him of the correct amount would have been a vain and useless thing. *Page 157 
(23) In order that petitioner's rights in the premises may be protected and preserved, it is necessary for a court of equity to intervene and exercise its extraordinary powers as hereinbefore [hereinafter?] prayed.
(24) W. O. McNair, having unlawfully excluded petitioner from possession, is liable to petitioner for reasonable rental of said property which petitioner alleges to be $65 per month, and in the accounting herein prayed for the defendant should be charged with $65 per month as the reasonable rental of said property from December 5, 1938, to the date said property is redelivered to petitioner by W. O. McNair, free from the lien of the security deeds in favor of said Macon Federal Savings Loan Association and B. R. McNair.
(25) As a result of the conduct of the defendants it was impossible for petitioner to obtain necessary funds with which to pay certain laborers and materialmen who have foreclosed liens against the property. Such foreclosures now pending in court; and in the accounting between W. O. McNair and petitioner the amount of the court costs in these various foreclosures, which will be exhibited to the court, should be charged to the said W. O. McNair.
The prayers were (a) for process; (b) for an accounting between petitioner and W. O. McNair; (c) that it be decreed that W. O. McNair holds the property described in the petition as trustee for petitioner, and that the security deed in favor of the Macon Federal Savings and Loan Association be canceled as a cloud upon petitioner's title; (d) that the security deed in favor of B. R. McNair be canceled as a cloud on petitioner's title; (e) that "if for any reason, based upon either fact or law or equity, either one or both deeds are not canceled by final decree of said court, that the said W. O. McNair be adjudged and decreed to hold the proceeds of such loan or loans as trustee for petitioner and required to account to him fully therefor;" (f) for general relief.
The demurrer filed by the Macon Federal Savings and Loan Association, and sustained by the court, contained the following grounds: (1) The petition does not set out a cause of action against this defendant; (2) it does not appear from the petition that this defendant had notice or knowledge before the making of the loan to W. O. McNair, of any claim of title of the plaintiff; (3) it appears from said petition that before the making of the *Page 158 
loan by this defendant to W. O. McNair, the plaintiff was never himself in possession of said property, the only claim of possession as alleged being through a tenant, and it not appearing from the petition when said tenant entered into possession, or that said tenant was in possession before the making of said loan; (4) the plaintiff seeks the aid of the court of equity without himself offering to do equity, in that no tender is made to this defendant of the value of the improvements placed on the property described, by virtue of the use of the funds of this defendant.